UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CHARLES HOOVER,

    Petitioner,

 -against-

MICHAEL E. GIAMBRUNO, Superintendent,

    Respondent.

------------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. CV-04-659(FB)

*Appearances:*
*For the Plaintiff:*
CHARLES HOOVER, *Pro Se*
01-A-3747
Wyoming Correctional Facility
3203 Dunbar Road, Post Office Box 501
Attica, New York 14011

*For the Defendant:*
CHARLES J. HYNES, Esq.
District Attorney, Kings County
By: DIANA VILLANUEVA, Esq.
Assistant District Attorney
350 Jay Street, 20th Floor
Brooklyn, NY 11201

**BLOCK, District Judge:**

  Petitioner Charles Hoover ("Hoover") seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 following his conviction in New York Supreme Court, Kings County, of one count of weapons possession. Hoover filed his original petition on February 13, 2004; on July 23, 2004, the Court granted Hoover's motion to stay the petition while he pursued his unexhausted claims in state court. On February 1, 2005, the Court re-opened Hoover's case and directed him to file a supplemental petition as to his new claims. Taken together, Hoover's original and supplemental petitions claim that (1) Hoover was denied his Sixth Amendment right to cross-examine witnesses against him at trial; (2) Hoover's

1

due process rights were violated by the trial court's refusal to permit a witness to testify regarding an incident which demonstrated the alleged bias of a prosecution witness and by the prosecutor's statements during summation; (3) Hoover's right to a fair trial was violated when the state court failed to hold a *Dunaway* hearing to determine whether probable cause existed to arrest Hoover, and (4) defense counsel was ineffective for failing to object to the trial court's decision not to hold the hearing. Respondents assert that Hoover's claims regarding the *Dunaway* hearing and prosecutor's remarks during summation are procedurally barred, and that although his claims that his Sixth and Fourteenth Amendment rights were violated when the trial court limited his cross-examination and preluded the testimony of a witness were exhausted in state court, they are without merit. For the reasons set forth below, the Court addresses each of Hoover's claims on their merits but denies the petition.

I.

On June 27, 2000, Hoover was arrested and charged with one count of criminal possession of a weapon in the third degree. At trial, the arresting officers, Sergeant Guarino ("Guarino") and Detective Hermann ("Hermann"), testified that prior to Hoover's arrest they observed Hoover and an unidentified individual engaged in a verbal argument; the second individual was holding the front of his waistband and pointing his finger in Hoover's face. Guarino testified that upon approaching to investigate, the second individual fled into a building; Guarino then observed that Hoover was holding a handgun at his side. As Guarino ordered Hoover to drop the gun and moved to draw his own weapon, Hoover tossed the gun onto the roof of a car parked nearby. Although Hermann testified that he was on the other side of the car and did not

observe Hoover holding the weapon, he heard Guarino order Hoover to drop the gun, and turned in time to see Hoover toss the weapon onto the car's roof. Hermann retrieved the weapon, a nine-millimeter handgun, and Guarino placed Hoover under arrest.

Prior to trial, the prosecution suggested that it intended to use statements made by Hoover at the time of his arrest as evidence at trial, and the court accordingly granted Hoover a *Dunaway/Huntley* hearing to determine whether the arrest was supported by probable cause and the statements were given voluntarily. Hoover acknowledges that the prosecution subsequently decided not to introduce his statements at trial; consequently, no hearing was ever held to determine their admissibility. Although the state court record does not reflect that Hoover's trial counsel requested a *Dunaway* hearing to determine the admissibility of the weapon recovered from the scene of the arrest, or that the state court ever addressed or ruled upon the propriety of such a hearing, Hoover's petition includes a letter from his trial counsel stating that the trial court did not hold a hearing to determine its admissibility because Hoover's defense at trial was that the gun was not his and that it had never been in his possession, and that the judge therefore determined that Hoover lacked standing to challenge its admission. *See* Supp. Pet. for Writ of Habeas Corpus, Ex. B at 1.[1]

At trial, Hoover's defense was that he had been framed by the arresting

---

[1] Hoover's trial counsel further stated that the state court's denial of the *Dunaway* hearing on the ground that Hoover lacked standing would be reflected in the record of the pre-trial proceedings before the trial judge. *See* Supp. Pet. for Writ of Habeas Corpus, Ex. D at 1. According to the trial court's Senior Court Reporter, there are no transcripts for any proceedings before the trial judge prior to the first day of the trial, *see id.*, Ex. F at 1, and it therefore appears that there is no record of any proceedings during which a hearing to determine the weapon's admissibility was discussed.

3

officers. According to Hoover's petition, they harbored animus against him as the result of a civil lawsuit he had previously brought against other New York City police officers. Colloquy between trial counsel and the trial court reveals that this lawsuit stemmed from a prior unrelated arrest of Hoover during which Hoover was shot; Hoover lost his leg as a result of the shooting, and following an unsuccessful prosecution on the charges that formed the grounds for this previous arrest, he successfully sued the officers involved for damages.

Hoover's counsel sought leave to cross-examine Guarino and Hermann as to what they knew about Hoover's lawsuit in an attempt to show their bias. The trial judge ruled that Hoover would be allowed to cross-examine them about their knowledge of and dealings with the defendant prior to his arrest and could present extrinsic evidence to contradict any denials by the officers; however, the judge cautioned that if the officers denied such knowledge and dealings, Hoover would be precluded from asking them further questions about the incident on the grounds of prejudice.

On cross-examination, both officers testified that they had not learned of how Hoover lost his leg until after his arrest on the weapons charges; consequently, the judge barred further questioning on the subject. For reasons that are not explained, defense counsel inquired of Hermann, but not of Guarino, whether Hermann knew the officers involved in Hoover's civil suit; Hermann responded that he had never heard of any of the officers involved.

In a further attempt to demonstrate bias on the part of Guarino, Hoover's trial counsel also sought to introduce the testimony of Anderson Best ("Best") that two days prior to trial Sergeant Guarino had approached Hoover and stated, presumably in

reference to Hoover's civil suit, "I see you got a new car, don't worry, we're going to get you." Tr. at 175.[2] The trial court excluded the witness, reasoning that his statement was not relevant to the issue of bias because Guarino's testimony at the Grand Jury, which occurred months prior to this statement, was almost identical to the testimony he had given at trial, and there was no showing that Guarino had any motive to falsify his testimony at the time he appeared before the Grand Jury. The trial court also reasoned that although Guarino was a material witness, he was not the prime witness linking Hoover to the gun.

As a result of the trial court's ruling that Best would not be allowed to testify, Hoover's case consisted solely of the testimony of Keith Goram ("Goram"), Hoover's close friend, who stated that on the night of the arrest he and Hoover had attended a yearly festival held at a local high school, and that he had not observed Hoover to be in possession of a weapon. Goram further testified that he did not witness the arrest because he was in a local corner store purchasing drinks at the time it occurred. Goram's testimony was undermined during the prosecution's rebuttal case by two witnesses: the first, a police officer responsible for security at the school, testified that there was no festival at the school on the night in question, and the second, the corner store owner, testified that his store was not open at the hour Goram alleged he had purchased drinks.

During closing arguments, defense counsel accused Guarino of lying about the circumstances surrounding the arrest, and suggested that the gun belonged to the individual who had fled the scene when the officers approached but that Hoover had been

---

[2]References to "Tr. ___" are to the transcript of the state court trial proceedings.

5

framed for the crime. In its summation, the prosecution argued that the officers did not know Hoover prior to the arrest, and had no animosity towards him or any reason to charge him with a crime he did not commit. The prosecutor also stated several times that Goram was a liar and that his testimony was not truthful, and asserted that the defense claim that there was a festival on the night of Hoover's arrest was not true; objections to these comments were overruled by the trial judge. In its charge, the trial court twice instructed that it was the jury's job to evaluate the credibility of the witnesses, and stated that the jury was free to accept or reject the arguments made by the attorneys, depending upon whether they found the arguments reasonable, logical, and consistent with the evidence; the court also instructed the jury that it must decide the case based solely on the witnesses's testimony and exhibits admitted into evidence. Following a jury verdict convicting Hoover of weapons possession, Hoover was sentenced as a predicate felon to a six-year term of imprisonment.

On direct appeal, the Appellate Division affirmed Hoover's conviction, ruling that the trial court correctly precluded the defense from questioning the arresting officers about the civil suit "since the defendant had failed to establish that the detectives had any knowledge of the civil lawsuit at the time of the defendant's arrest, or any connection with the officers involved in the lawsuit," and that a trial court may properly preclude proof aimed at establishing a motive to fabricate where that proof is "too remote and speculative"; the court summarily rejected as without merit Hoover's claim based on the trial court's failure to allow Best to testify. *People v. Hoover*, 750 N.Y.S.2d 304, 305 (2d Dep't 2002). With respect to Hoover's claim that the prosecutor's remarks during summation had denied him of a fair trial, the Appellate Division held that Hoover's challenges were

"for the most part" unpreserved for appellate review, but that they were "in any event" without merit. *Id.* Leave to appeal to the Court of Appeals was denied on February 3, 2003. *See People v. Hoover*, 99 N.Y. 2d 615 (2003).

Hoover subsequently filed a motion before the trial judge to vacate his conviction pursuant to N.Y.C.P.L. § 440.10, arguing that the trial judge erred in failing to hold a *Dunway/Huntley* hearing after it was initially granted; that the trial judge improperly concluded he did not have standing seek a suppression hearing; and that trial counsel was ineffective for failing to object to the refusal to hold a hearing. The trial court denied Hoover's motion on the grounds that the claims could have been raised on direct appeal and were therefore barred, and that they were in any event without merit. Hoover's original and supplemental petitions assert each of the claims previously raised and rejected by the state court on direct and post-conviction review.

## II.

### A. Standards of Review

Only federal issues may be raised on *habeas* review. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (internal quotation marks omitted). When a state court "says that a claim is 'not preserved for appellate review' and then rule[s] 'in any event' on the merits, such a claim is not preserved" for federal review. *See*

*Glenn v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996). To bar federal review, however, the state court's reliance on a procedural rule must be "clear from the face of the opinion." *Coleman*, 501 U.S. at 735.

The degree of deference to be given to a state court's ruling that does not make clear whether a claim was rejected for procedural or substantive reasons is "anything but clear," *Shih Wei Su v. Filion*, 335 F.3d 119, 126 and n.3 (2d Cir. 2003) (comparing *Ryan v. Miller*, 303 F.3d 231, 246 (2d Cir. 2002) (giving AEDPA deference) with *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003) (declining to give AEDPA deference)). Until it is resolved by the Second Circuit, this potentially thorny issue can be avoided if the claim can be denied on *de novo* review. *See, e.g., Robinson v. Ricks*, 2004 WL 1638171 at *8, n.8 (E.D.N.Y. July 22, 2004) (declining to decide whether AEDPA deference applied "because [petitioner's] claim . . . fails even under a *de novo* standard of review.").

By contrast, when the state court's decision demonstrates that a federal claim has been "adjudicated on the merits," the state court's judgment is entitled to substantial deference. *See* 28 U.S.C. § 2254(d). "[A] state court adjudicates a state prisoner's federal claim on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (citations and quotations omitted).

For claims "adjudicated on the merits," *habeas* relief may not be granted unless the state court decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court

8

decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different conclusion. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision involves an "unreasonable application" of clearly established federal law if it unreasonably applies Supreme Court precedent to the particular facts of a case. *See id.* at 409. This inquiry requires a court to "ask whether the state court's application of clearly established federal law was objectively unreasonable," not whether the application was erroneous or incorrect. *Id.* In that respect, the standard to be applied "falls somewhere between merely erroneous and unreasonable to all reasonable jurists." *Wade v. Mantello*, 333 F.3d 51, 57 (2d Cir. 2003) (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)).

## B. Hoover's Claims

### 1. Cross-Examination of Prosecution Witnesses

The state court's determination that the limitation of Hoover's cross-examination on the issue of possible bias did not violate Hoover's Sixth Amendment rights was not contrary to, or an unreasonable application of, clearly established federal law. Although "the motivation of a witness in testifying, including . . . any bias or prejudice against the defendant, is one of the principal subjects for cross examination," and potential bias is an "important area for cross-examination when the witness is the . . . sole witness to the acts of which [the defendant is accused]," "the Confrontation Clause does not deprive the trial judge of all discretion to set limits on the cross-examination of a prosecution witness for potential bias." *Henry v. Speckard*, 22 F.3d 1209, 1214-15 (2d Cir.

9

1994). "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness.... A complete bar on examination into bias would impermissibly deny the jury information central to assessing [the witness's] reliability." *Id.* at 1215 (citations and quotation marks omitted).

The trial judge gave Hoover sufficient leeway to ask questions designed to expose animus towards Hoover at the time of his arrest, and a motive to falsify charges against Hoover. Because the officers testified that they did not know Hoover when he was arrested and charged with weapons possession, nor had any knowledge of the circumstances under which Hoover had lost his leg, it was entirely speculative to argue that further questioning on the subject would have elicited evidence of animus towards Hoover at the time of his arrest. Questions regarding the circumstances under which Hoover lost his leg, which the officers testified they only subsequently became aware of, would certainly not have been probative of any bias that allegedly existed upon Hoover's arrest, and it was within the trial court's sound discretion to curtail such questioning on the ground that it would have been unduly prejudicial.

## 2. Denial of Request to Present Testimony of Anderson Best

Similarly, the Appellate Division's determination that Hoover's challenge to the trial judge's exclusion of Best's testimony was without merit was not contrary to, or an unreasonable application of, clearly established federal law. "The right to call witnesses in order to present a meaningful defense at a criminal trial is a fundamental constitutional right secured by both the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment." *Washington v. Schriver*, 255 F.3d 45, 56 (2d

Cir. 2001) (citing *Taylor v. Illinois*, 484 U.S. 400, 408-09 (1988)). However, the right is not unlimited, and "'[e]rroneous evidentiary rulings rarely rise to the level of harm to this fundamental constitutional right' to present a meaningful defense." *Id.* (quoting *Agard v. Portuondo*, 117 F.3d 696, 705 (2d Cir. 1997)). The test for determining whether a limitation on the right to present a witness rises to the level of a constitutional violation is whether "'the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.' In a close case, 'additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.' . . . The creation of otherwise non-existent reasonable doubt satisfies the 'substantial and injurious' standard [of *Brecht v. Abrahamson*, 507 U.S. 619 (1993)]." *Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir. 2001) (citing *Jones v. Stinson*, 229 F.3d 112, 120 (2d Cir. 2000)). Preclusion of witness testimony sufficient to create a reasonable doubt may be found, for example, where the testimony sought to be introduced is the only independent evidence buttressing a defendant's case, *see United States v. Blum*, 62 F.3d 63, 69 (2d Cir. 1995), or whether the witness's testimony would have impeached the testimony of the sole witness to identify the defendant or would have been the only testimony presented at trial in the defendant's favor. *See Rosario v. Kuhlman*, 839 F.2d 918, 926 (2d Cir. 1988).

Assuming that the trial court erred in precluding Hoover from calling Best as a witness, this error did not rise to the level of a constitutional violation. Seen in the light most favorable to Hoover, Best's testimony would at most have provided evidence that Guarino had a motive to testify falsely against Hoover at trial; however, Guarino's testimony related to events that occurred on the night of the arrest, and Best's testimony would not have provided evidence to support the defense's theory that bias against

11

Hoover at the time of his arrest led the officers to frame Hoover for the crime on that night. Given the officers' denial of any knowledge of Hoover prior to his arrest, Best's testimony would at most have demonstrated that animus against Hoover arose at some time after the alleged frame-up occurred. Finally, Guarino's testimony regarding events on the night of the arrest was corroborated by Hermann, who was not subject to a similar accusation of bias, and Best's exclusion did not entirely prevent Hoover from presenting evidence in his defense. Examining Best's testimony in the context of the entire record, which was devoid of any evidence of motivation to frame Hoover at the time of his arrest, the Court cannot conclude that its admission would have created a reasonable doubt that did not otherwise exist.

### 3. Prosecutor's Summation

Because the Appellate Division held that Hoover's challenges to remarks made by the prosecution during summation were "for the most part" unpreserved for appellate review, and that they were also without merit, it is not "clear from the face of the opinion," *Coleman*, 502 U.S. at 735, whether the appellate court relied upon the state procedural rule in rejecting this claim; therefore, the Court will address its merits *de novo*. *See Shih Wei Su*, 335 F.3d at 126 & n.3.

"[I]t is not enough that the prosecutors' remarks [during summation] were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 180 (1986) (citations and quotation marks omitted). The relevant inquiry is whether the "comments so infected the trial with unfairness as to make the resulting conviction a denial of due process"; in conducting this inquiry the prosecutor's comments must be examined to "determine their effect on the trial as a whole," and in doing so it is proper to consider

12

whether particular comments were "invited by or responsive to the opening summation of the defense." Id. at 180, 182. In deciding whether a prosecutor's remarks rendered a trial as a whole fundamentally unfair, the Second Circuit has "considered the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998) (citations and quotation marks omitted).

The summation was not fundamentally unfair and therefore did not deprive Hoover of due process; the prosecutor's statements that the defense witness had lied were partially responsive to defense counsel's assertion that Guarino was lying about the events surrounding Hooover's arrest. Examined in the context of the trial as a whole these statements did not render the trial fundamentally unfair, especially because Goram's testimony had been severely undermined by that of two uninterested witnesses who refuted key portions of his story. Similarly, the prosecutor's assertion that the officers did not have any motive to charge Hoover with a crime he did not commit was responsive to defense counsel's argument that Hoover had been framed on the night of his arrest, and was a fair comment on both the officers' testimony that they did not know Hoover before his arrest and the lack of evidence to suggest a motive to frame Hoover. Any harm that may have been caused by the prosecutor's remarks was further mitigated by the instructions given by the trial court, which stressed that the jury must determine the credibility of the witnesses and decide the case solely on the basis of the testimony and physical evidence. Finally, there was a strong certainty of conviction absent the statements in light of the two arresting officers' testimony and the contradiction of key aspects of the sole defense witness' testimony by the prosecution's rebuttal witnesses. This is not a case

13

"in which the evidence was so closely balanced that the prosecutor's comments were likely to have had a substantial effect on the jury." *Tankleff*, 135 F.3d at 253.

### 4. Failure to hold *Dunaway* Hearing

Hoover did not challenge the trial court's ruling with respect to the *Dunaway* hearing on direct appeal. In ruling on Hoover's subsequent § 440.10 motion, the Supreme Court held that Hoover's claims that the trial court improperly denied a *Dunaway* hearing and that trial counsel was ineffective for failing to object to that denial could have been raised on appeal and were therefore not reviewable. Failure to comply with the state's rule prohibiting review of a claim on collateral review when defendant unjustifiably fails to raise it on direct review is an independent and adequate state ground which precludes federal *habeas* review. *See Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir. 2001). Hoover has not alleged, or attempted to demonstrate, cause for this procedural default and actual prejudice or that "failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In any event, even assuming that the Court were to conclude that federal review was not barred by Hoover's procedural default, these claims would fail.

### a. Post-Arrest Statements

Hoover's claim that the trial judge improperly denied him a *Dunaway* hearing once the prosecution determined that it would not use Hoover's statements at trial is without merit. In *Dunaway v. New York*, 442 U.S. 200 (1979), the Supreme Court held that the police violated the Fourth Amendment when they seized the petitioner without probable cause and transported him to the police station for interrogation, and that incriminating statements and sketches obtained during his detention were therefore inadmissible at trial. *Id.* at 216, 219. "As a result, when an accused in New York challenges

the presence of probable cause to arrest, the accused is, under certain circumstances, entitled to a hearing on whether to suppress an admission that was obtained after the arrest. . . . If the court determines that the defendant made an 'involuntary statement,' which includes statements obtained after an arrest without probable cause . . . the statement is inadmissible." *Thomas v. Lord*, 396 F. Supp. 2d 327, 335 (E.D.N.Y. 2005) (citations and quotation marks omitted). Hoover acknowledges that the prosecution determined prior to trial that it would not use his post-arrest statements at trial, and the statements were never introduced. Because the prosecution did not seek to admit Hoover's statements at trial, Hoover was not entitled to a hearing to determine whether they should be suppressed on the ground that the police lacked probable cause for his arrest.

**b. Admissibility of Weapon**

To the extent that Hoover argues that his Fourth Amendment rights were violated by the trial court's allegedly improper determination that Hoover lacked standing to seek suppression of the weapon recovered from the scene of the arrest, and that trial counsel was ineffective for failing to object to the decision not to hold a hearing, this argument also fails.

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held that "where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494-95. The Second Circuit has held that *Stone* requires only an "*opportunity . . . for a full and fair litigation of [a state prisoner's] fourth amendment claim[s]*," *see Gates v. Henderson*, 568 F.2d 820, 839 (2d Cir. 1977), and that a review of Fourth Amendment claims in habeas

15

petitions is permissible only: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).

The Second Circuit has held that New York provides a corrective procedure for Fourth Amendment violations that is facially adequate to redress alleged fourth amendment violations. *See Capellan*, 975 F.2d at 70 n.1. Where pursuant to this procedure a state court makes a determination that a defendant lacks standing to seek suppression of evidence, this does not amount to an unconscionable breakdown in the process, even if the court erroneously decides the standing issue. *See id.* at 71. Because the Court lacks knowledge of that portion of the record allegedly containing the trial court's ruling on this issue, it cannot determine whether any breakdown in the process occurred. However, even if the court were to address the merits of Hoover's Fourth Amendment claim, and determine that the trial court erroneously determined that Hoover lacked standing to seek suppression of the weapon, it would conclude that any such error was harmless. The record demonstrates that any seizure which resulted in recovery of the weapon was supported by reasonable suspicion on the part of the arresting officer to believe criminal activity was afoot because the officer observed Hoover in possession of a gun after what appeared to be a heated confrontation with another individual who fled the scene when the officers approached. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968). Because any motion to suppress the weapon would have been frivolous, trial counsel's alleged failure to object to the trial court's determination that Hoover lacked standing for such a hearing was not

ineffective. *See Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984) (a defendant must show that counsel's representation "fell below an objective standard of reasonableness" based on "prevailing professional norms," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

### III.

Hoover's § 2254 petition is denied. Because Hoover has failed to make a substantial showing of the denial of a federal right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253.

**SO ORDERED.**

FREDERIC BLOCK
United States District Judge

Brooklyn, NY
January 18, 2006